USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                            :
THE CARLTON GROUP, LTD.,              :
                       Plaintiff,  :
                                      :           16 Civ. 6649 (LGS)
           -against-            :
                                      :           **OPINION AND ORDER**
MIRABELLA SG SpA,                :
                                      :
                    Defendant.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff, The Carlton Group, Ltd. ("Carlton"), brings this breach of contract action under New York law seeking payment for financial services it performed for Defendant Mirabella SG SpA ("Mirabella") under the terms of the parties' "Exclusive Debt and Equity Advisory Agreement" (the "Agreement")  After the parties cross-moved for summary judgment, in an Opinion and Order ("Opinion"), Defendant's motion for summary judgment was granted, and Plaintiff's motion for summary judgment was denied.  Plaintiff moves for reconsideration.  For the following reasons, Plaintiff's motion is DENIED.

      Familiarity with the Opinion, the underlying facts and procedural history is assumed.

I.    **STANDARD**

      "A motion for reconsideration should be granted only when [a party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted); *accord Impax Labs., Inc. v. Turing Pharm. AG*, No. 16 Civ. 3241, 2018 WL 4007641, at *3 (S.D.N.Y. Aug. 21, 2018).  The standard "is strict, and reconsideration will generally be denied unless the

moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted); *accord In re Effecten-Spiegel AG*, No. 18 Misc. 93, 2018 WL 3812444, at *3 (S.D.N.Y. Aug. 10, 2018). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Id.* (internal quotation marks omitted). The decision to grant or deny a motion for reconsideration, whether under Local Rule 6.3, Rule 59(e) or 60(a), rests within "the sound discretion of the district court." *See Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (internal quotation marks omitted); *accord Reynolds v. Hearst Commc'ns, Inc.*, No. 17 Civ. 6720, 2018 WL 1602867, at *1 (S.D.N.Y. Mar. 29, 2018).

## II. DISCUSSION

Plaintiff brought this action seeking payment under the Agreement of either a (1) Restructuring Fee and Retainer Fee, or (2) Commission.[1] Plaintiff seeks reconsideration of two aspects of the Opinion on the ground of clear error. The first is the holding that Plaintiff abandoned its claim to a Restructuring Fee by expressly and repeatedly stating on summary judgment that it was not pursuing a Restructuring Fee. The second is the holding that Plaintiff was entitled to an Equity Commission, but that under the Agreement the amount of such commission was zero. Neither holding warrants reconsideration.

### A. Abandonment

"[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others [that are the subject of the summary judgment motion] may be deemed an abandonment of the unmentioned claims." *Jackson v. Fed. Exp.*, 766 F.3d 189, 195

---

[1] All capitalized terms used but not defined in this opinion are defined as in the Agreement.

2

(2d Cir. 2014) (citing Fed. R. Civ. P. 56(c)); *accord Kovaco v. Rockbestos-Surprenant Cable Corp.,* 834 F.3d 128, 143 (2d Cir. 2016). "Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended." *Jackson*, 766 F.3d at 196.

The Court did not commit clear error in holding that Carlton abandoned its Restructuring Fee claim. Carlton's abandonment was explicit and unequivocal. In its moving papers, Carlton stated that it was pursuing a Commission and not a Restructuring Fee: "Defendant has asserted 55 'statements of fact' which Plaintiff disputes . . . . None of these 'facts' are material because Plaintiff's claim is for a 'financing commission' not a 'Restructuring Fee.'" Carlton further said: "Carlton's arguable non-entitlement to the separate Restructuring Fee due under § 3(F) is of no moment – if true, that provides no defense and is utterly non-responsive to Carlton's claim under §§ 3(B) and (C)." Carlton even explained why it is not entitled to a Restructuring Fee: "Since, here, the parties agree that the financing transaction that took place with the Existing Lenders did not involve even a 'penny' of discount, there was no 'Restructuring.'"

Carlton was not required to move for summary judgment on its entitlement to a Restructuring Fee in the alternative to a Commission. However, to avoid a concession, Carlton was obligated -- but failed -- to oppose Defendant's motion for summary judgment as to the Restructuring Fee. *Jackson*, 766 F.3d at 195. Defendant challenged the claim in a section of its moving papers titled, "Undisputed Evidence Establishes that Carlton Is Not Entitled to a Restructuring Fee." Carlton refused to dispute the issue and instead reiterated: "Carlton is not now pursuing a Restructuring Fee, let alone the Minimum Restructuring Fee." Carlton explained why it had previously -- but "not now" -- sought a restructuring fee; it had been "unaware that

3

the [financing] did not include a discount. . .[but] in discovery definitively learned that no discount was involved." Since Carlton explicitly stated that it was no longer pursuing a Restructuring Fee, and explained more than once why it believed it was not entitled to such a fee (the financing did not involve a discount), the Court properly held that Carlton had abandoned its Restructuring Fee claim.

Carlton's two arguments to the contrary are unavailing. First, Carlton argues that the parties' Joint Statement of Material Facts and its opposition to Defendant's summary judgment motion dispute Defendants' allegations that the Gatehouse Commitment was not a bona fide commitment eligible for a Restructuring Fee. Carlton argues that "[t]here was no reason for Plaintiff to include . . . extensive argument in it memorandum of law [about the Gatehouse Commitment] if . . . Plaintiff was abandoning its alternative claim for a minimum Restructuring Fee." Although Plaintiff's Motion for Reconsideration characterizes its discussion of the Gatehouse Commitment as supporting an "alternative claim" for a Restructuring Fee, its opposition to Defendant's motion states otherwise. In its opposition, Plaintiff called the Gatehouse Commitment a "red herring" because the "Gatehouse Commitment is only Relevant to Determining the Amount of Restructuring Fee, and None is Now being Claimed." Plaintiff's opposition also states that "Carlton is not now seeking a Restructuring Fee, let alone the €2,500,000 minimum Restructuring Fee [which was due under the Amendment to the Agreement upon the delivery of a Gatehouse Commitment]. In consequence, the 'bona fides' of the Gatehouse Commitment are immaterial." Based on these statements, the Court did not deduce that Plaintiff's position concerning the Gatehouse Commitment reflected any intention to pursue a Restructuring Fee claim.

Second, Carlton argues that the Court erroneously applied controlling New York law because courts presume a contract claim has been abandoned under state law only if there is

4

"waiver, release, estoppel or an 'election of remedies.'" By way of support, Plaintiff cites New York case law that cautions against applying waiver or estoppel unless there is a clear manifestation of intent to set aside a contractual protection. This argument is misplaced. In those cases, courts attempted to understand from parties' behavior *prior* to the lawsuit whether they abandoned a contractual protection. As a result, courts focused on whether a party modified the substance of a contractual agreement through its conduct. *See Gilbert Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988) (settlement negotiations between an insured and its insurer after the expiry date on an insurance policy is not sufficient evidence that the insurer waived the limitations period set out in the policy); *Stoetzel v. Wappingers Cent. Sch. Dist.*, 499 N.Y.S.2d 788, 789 (2d Dep't 1986) (holding that the plaintiff did not waive a judicial remedy when he abandoned a grievance procedure dictated by his collective bargaining agreement at an early stage and filed a court complaint instead). In contrast, here, the relevant question is whether Plaintiff's conduct *during* litigation evidenced an intent not to pursue a particular contractual claim in court. *See, e.g., Lykins v. IMPCO Techs., Inc.*, No. 15 Civ. 2102, 2018 WL 3231542, at *12 (S.D.N.Y. Mar. 6, 2018) (holding that the plaintiffs abandoned their breach of contract claims by failing to respond to them in their opposition to defendant's summary judgment); *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14 Civ. 8467, 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016) (same). Since Plaintiff's moving papers and opposition establish that it did not intend to pursue -- in the alternative or otherwise -- its Restructuring Fee claim, the Court did not commit clear error in concluding that Carlton had abandoned it.

### B. Calculation of the Equity Commission

In its motion for reconsideration, Plaintiff argues that the Court miscalculated the Equity Commission it was due on the "new money" portion of the Mirabella-Aareal Agreement. Under the Mirabella-Aareal Agreement, Mirabella's lender extended the maturity dates on Mirabella's existing debt and issued it a new loan of €6,878,947 ("Aareal New Loan").

The contract language in question states in relevant part that, if Defendant accepts a Commitment for subordinate financing, then Defendant must pay Plaintiff an Equity Commission of 2% "of the maximum amount of the Commitment for funds in excess of 60% of the total project capitalization." Plaintiff argued on summary judgment that this provision means that Plaintiff is entitled to an Equity Commission on 40% of the total project capitalization (i.e., the total financing), regardless of the percentage of actual junior or senior financing obtained. *See* Dkt. 85 at 17 n.11. Defendant argued a different interpretation, and the Court agreed, that the "in excess" language means that no Equity Commission was due to Plaintiff on the Aareal New Loan because it was not more than 60% of the total financing. Both parties agreed that the terms of the contract are unambiguous and that the matter was ripe for summary judgment.

In its Motion for Reconsideration, Plaintiff repeats its interpretation from the summary judgment motions, but Plaintiff in effect now argues a new and alternative contract interpretation. The new interpretation makes the Equity Commission dependent on whether the equity commitment is in the junior 40% of the capital stack. The result, Plaintiff argues, is that it is entitled to a 2% Equity Commission on the amount of the Aareal New Loan, because that loan was in the junior 40% of the capital stack.

This argument fails for two reasons. First, it offers a new interpretation of the Agreement, resulting in a new amount of Equity Commission, from what Plaintiff argued during summary judgment motions. "It is well-settled that Rule 59 is not a vehicle for relitigating old

6

issues, presenting the case under new theories, securing a rehearing on the merits or otherwise taking a 'second bite at the apple.'" *Analytical Surveys*, 684 F.3d at 52 (internal quotation mark omitted).

Second, the new interpretation is based on custom and practice, but there is no custom and practice evidence in the record, except a website that Plaintiff cites for the first time in its memorandum in support of the motion for reconsideration. Under New York law, the party seeking to establish custom and practice must put forward competent evidence that creates a genuine dispute of material fact as to whether "(1) the term in question has a fixed and invariable usage and (2) that the party sought to be bound was aware of the custom or that the custom's existence was so notorious that it should have been aware of it." *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Properties, LLC*, 467 F.3d 107, 134 (2d Cir. 2006) (internal quotation marks omitted) (applying New York law); *accord J.P. Morgan Inv. Mgmt. Inc. v. AmCash Grp., LLC*, 966 N.Y.S.2d 23, 24 (1st Dep't 2013).

Plaintiff did not present evidence on summary judgment that the phrase "in excess of 60% of the total project capitalization" is invariably understood to refer "to the 'location' of the equity funding in the project debt stack," and that this understanding was so notorious that Defendant should have been aware of it. Similarly, on its motion for reconsideration, Plaintiff does not point to any evidence in the record. Instead, it includes a chart "for illustrative purposes" showing "how the real estate industry views 'slices' of total project financing." As the record contains no evidence to support Plaintiff's latest interpretation, much less that the interpretation is "fixed and invariable," nor that Mirabella had actual or constructive knowledge of the interpretation, the motion for reconsideration fails. Whatever the merits of Plaintiff's argument, it is too late to begin to develop it now.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration is DENIED. The Clerk of Court is respectfully directed to close the motion at Docket Number 88.

Dated: January 25, 2019
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**